IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN FASTRICH and UNIVERSAL INVESTMENT SERVICES, INC., <br><br> **Plaintiffs,** <br><br> vs. <br><br> CONTINENTAL GENERAL INSURANCE COMPANY, GREAT AMERICAN FINANCIAL RESOURCES, INC., AMERICAN FINANCIAL GROUP, INC., and CIGNA CORPORATION, <br><br> **Defendants.** | CASE NO. 8:16-CV-00487-LSC-FG3 <br><br><br> **PLAINTIFFS' BRIEF IN OPPOSITION TO GREAT AMERICAN FINANCIAL RESOURCES, INC.'S RULE 12(B)(2) MOTION TO DISMISS** |

## INTRODUCTION

Defendant Great American Financial Resources, Inc. ("GAFRI")[1] had a significant role in the operations and conduct of Continental General Insurance Company ("CGI") that led to Plaintiffs' injuries during the period CGI was based in Omaha, Nebraska. GAFRI attempts to downplay its conduct and sidestep being held accountable for its actions in the state where its conduct occurred that harmed Plaintiffs − Nebraska. As more fully detailed below, since GAFRI's conduct that led to Plaintiffs' injures occurred in Nebraska, GAFRI is subject to this Court's jurisdiction. As such, GAFRI's motion to dismiss based on Federal Rule of Civil Procedure 12(b)(2) must be denied.

## FACTS

GAFRI played a significant role in the conduct alleged in the Complaint and reiterated in this Opposition and Plaintiffs' brief in opposition to Defendants' joint Rule 12(b)(6) motion to

---

[1] Defendant American Financial Group, Inc. has been dismissed without prejudice.

dismiss. CGI was acquired by GAFRI in August 2006 when GAFRI acquired Ceres Group, Inc., CGI's parent company. *See* Compl. ¶ 20. GAFRI immediately set out to heavily influence the activities of its newly acquired asset, CGI. Upon acquiring CGI, GAFRI informed the Nebraska Department of Insurance that it planned to "have certain persons who currently serve as officers or directors of GAFRI or one of its insurance subsidiaries become officer or directors of CGI." *In re Acquisition of Continental General Insurance Company*, Order Approving Acquisition, ¶ 9, Filed July 27, 2006, attached hereto as Exhibit 1. Additionally, GAFRI represented to the Nebraska Department of Insurance that it would "change the business the focus [of CGI] to exit the major medical business through reinsurance agreement with other insurers after the acquisition." *Id.* at ¶ 10. CGI's autonomy was eliminated by way of GAFRI's ownership.

GAFRI thereafter dictated the sales practices of CGI. As stated in the complaint, CGI and GAFRI sought approval from insurance regulators to sell new insurance products. Upon receiving approval for these products, GAFRI contacted existing policy holders and replaced the in-force policies with the new products while also replacing the existing agents of record who were prevented from marketing the new products. *See* Compl. ¶¶ 23-28. GAFRI continued the misconduct that originated with CGI. GAFRI wrongfully retained commissions, renewals, and/or overrides when licensed agents became non-vested that should have been reverted and paid to the next agent in the commission hierarchy. *See* Compl. ¶¶ 30, 36. GAFRI also failed to pay commissions on premium increases on long term care policies written before January 2000. Compl. ¶ 34.

## LEGAL ARGUMENT

**A.     Nebraska has personal jurisdiction over Defendant GAFRI.**

Plaintiffs allege claims against GAFRI based on its conduct carried out in Nebraska.  This conduct subjects GAFRI to personal jurisdiction in Nebraska.

Nebraska's long-arm statute authorizes personal jurisdiction over defendants who transact business in the state.  Neb. Rev. Stat. Ann § 25-536.  Nebraska's long-arm statute is as broad as the constitutional standard of due process. *AG-Tronic, Inc. v. Frank Paviour, Ltd.*, 70 F.R.D. 393, 398 (D. Neb. 1976). "Due process requires that the defendant purposefully establish minimum contacts in the forum state such that asserting personal jurisdiction and maintaining the lawsuit against the defendant does not offend traditional conceptions of fair play and substantial justice." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464, 474–477 (1985)).

The Eighth Circuit uses a five-factor test to determine whether sufficient minimum contacts exist: primarily, (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of the contacts; and (3) the relationship of the cause of action to the contacts; and, secondarily, (4) the interest of the forum state and its residents; and (5) the convenience to the parties.  *K-V Pharm. Co.*, 648 F.3d at 592. In determining whether a defendant has sufficient contacts with the forum state to exercise personal jurisdiction, the court must consider all of the contacts in the aggregate and examine the totality of the circumstances. *Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995).

**1.     GAFRI has extensive contacts with Nebraska that allow
         for a finding of personal jurisdiction.**

Of the five factors the Eighth Circuit uses for measuring minimum contacts for purposes of asserting personal jurisdiction over a defendant, significant weight is given to: (1) the nature

and quality of a defendant's contacts with a forum state; (2) the quantity of such contacts; and (3) the relation of the cause of action to the contacts. *See Romak USA, Inc. v. Rich*, 384 F. 3d 979, 984 (8th Cir. 2004) (citing *Dever v. Hentzen Coatings, Inc*, 380 F.3d 1070, 1073-74 (8th Cir. 2004). As set forth below, those factors allow for personal jurisdiction over GAFRI.

### a. GAFRI made multiple and numerous contacts with Nebraska.

The primary issue in examining the nature and quality of a defendant's contacts with the forum state is whether the nonresident defendant has "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." *See Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 576 (8th Cir. 1993) (citing *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977). The fair warning requirement will be satisfied if the defendant has "purposefully directed" his or her activities at the residents of the forum state. *Id*. (citing *Burger King*, 471 U.S. at 472). Purposefully directed means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party. *Burger King*, 471 U.S. at 475-76.

The fair warning requirement is satisfied here because GAFRI purposefully directed its activities at the residents of Nebraska. As alleged in the complaint, GAFRI's conduct, while its subsidiary CGI was headquartered in Nebraska, led to the harm incurred by Plaintiffs and members of the putative class by: (1) contacting existing policy holders and replacing the in-force policies with the new products while also replacing the existing agents of record who were prevented from marketing the new products, *see* Compl. ¶¶ 23-28; (2) retaining commissions, renewals, and/or overrides when licensed agents became non-vested instead of having such commissions, renewals, and/or overrides revert to the next agent up in the hierarchy, *see* Compl. ¶¶ 30, 36; and (3) failing to pay commissions on premium increases on long term care policies written before January 2000, *see* Compl. ¶ 34.

GAFRI directed the business of its subsidiary, CGI, which had its principal place of business in Omaha, Nebraska. For example, when GAFRI acquired CGI in 2006, it changed the way CGI operated by instilling new officers and directors that were allied with GAFRI. *In re Acquisition of Continental General Insurance Company*, Order Approving Acquisition, ¶ 9, Filed July 27, 2006, attached hereto as Exhibit 1. GAFRI also drastically changed the way CGI operated and sold products by having CGI and its agents exit the major medical business. *Id.* at ¶ 10.

GAFRI had extensive contacts with Nebraska by controlling the business of its subsidiary, CGI. GAFRI's contacts with Nebraska were purposeful and provided fair warning and that GAFRI would be subject to jurisdiction in Nebraska.

        **b.**      **GAFRI's contacts show specific personal jurisdiction.**

The third factor, the relationship of the contacts with the cause of action, distinguishes between specific and general personal jurisdiction. *Myers v. Casino Queen, Inc.*, 689 F.3d 904 (8th Cir. 2012). General jurisdiction is found where a defendant maintains such "continuous and systematic" contacts with a state that it becomes subject to the jurisdiction of that state's court for any purpose. Specific jurisdiction, on the other hand, may be found when a non-resident defendant "has purposefully directed [its] activities at [the jurisdiction's] residents,' and the claim of this suit either 'arises out of' or 'relates to' these activities." *Lakin v. Prudential Sec.*, 348 F.3d 704, 707 (8th Cir. 2003) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). As to nonresident parent corporations, courts assert personal jurisdiction over such entities based on the parent corporation's own actions in the forum state. *See Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 196 F. Supp. 3d 985, 989-91 (D. Minn. 2016) (citing *Anderson v. Dassault Aviation*, 361 F.3d 449, 452-53 (8th Cir. 2004)). ("When considering the nonresident parent corporation's actions in the forum state, one factor to consider is whether the parent and

subsidiary have a "close, synergistic" relationship that goes beyond "mere ownership.") As discussed below, this Court has personal jurisdiction over GAFRI based on specific jurisdiction as Plaintiffs' claims arise from and relate to GAFRI's conduct and its close, synergistic relationship with its subsidiary, CGI, in Nebraska.

Specific jurisdiction exists over GAFRI because the company purposefully directed its activities at Nebraska residents and such activities give rise to Plaintiffs' claims. GAFRI reached into Nebraska to control CGI and dictate CGI's business operations, which harmed Plaintiffs. GAFRI used CGI to replace existing policies and agents of record and sell new products to policyholders.  Compl. ¶¶ 24-25.  As a result, GAFRI caused a decrease in sales of previous products and a decrease in commissions owed to agents. *Id*. While CGI was based in Nebraska, GAFRI retained commissions, renewals, and/or overrides when licensed CGI agents became non-vested instead of paying as promised this compensation to the next CGI agent in the hierarchy. *See* Compl. ¶¶ 30, 36.  Additionally, GAFRI failed to pay commissions on premium increases on long term care policies written before January 2000. Compl. ¶ 34. GAFRI's conduct that it carried out in Nebraska injured Plaintiffs.

The relationship of GAFRI's contacts with the Plaintiffs' claims weighs in favor of establishing minimum contacts so that GAFRI is subject to Nebraska jurisdiction. GAFRI directed its activities at Nebraska residents as a result of its business practices and its close, synergistic relationship with CGI that go beyond mere ownership. Such business practices led to GAFRI breaching its contracts with Plaintiffs, interfering with Plaintiffs and insureds' contractual relationships, and causing harm to Plaintiffs. As such, this Court has personal jurisdiction over GAFRI based on specific jurisdiction

        **c.**       **The interests of Nebraska support a finding of**
                      **jurisdiction over GAFRI.**

Nebraska has a significant interest in discouraging injuries brought about by breaches of contract that occur in the state. *See Proxibid, Inc. v. BigGavel.com, Inc.*, No. 8:07CV396, 2008 U.S. Dist. LEXIS 122965, at \*16-17 (D. Neb. May 21, 2008) ("Nebraska has a significant interest in discouraging injuries in its state and in providing an efficient forum for redress of such injuries."). As mention above, GAFRI's conduct that gave rise to the Plaintiffs' injuries occurred as result of their control of CGI and its sales practices while CGI was based in Nebraska. Given that GAFRI's conduct occurred in Nebraska and led to Plaintiffs' injuries, this Court has a significant interest in ruling on the claims in this case.

        **d.**       **Nebraska is a convenient forum.**

Nebraska is a convenient forum for both Plaintiffs and GAFRI. If Plaintiffs filed their suit in their home state, Indiana, Defendants would still need to appear in an out-of-state forum. If Plaintiffs filed their suit against GAFRI in its home state of Ohio, Plaintiffs would have to travel out of state. However, Nebraska is the forum that Plaintiffs selected. The Eighth Circuit has recognized that a plaintiff is normally entitled to choose the forum in which to litigate a case. *See Northrup King Co. v. Compania Productora Semillas Algodoneras*, 51 F.3d 1383, 1389 (8th Cir. 1995). GAFRI was recently sued in this Court in another matter brought by a CGI agent, yet it did not raise any personal jurisdiction issues. In fact, they went so far as to make Rule 26 disclosures. *See The Mogen Agency et al. v. Great American Financial Resources et al., Case No. 8:13-cv-00381,* Defendants' Rule 26(a)(1) Initial Disclosures, filed May 30, 2014, attached hereto as Exhibit 2. If Nebraska was convenient for GAFRI to do business in and to defend a similar lawsuit, then it should be convenient for GAFRI to litigate this action.

When viewed together, the nature, quality and quantity of GAFRI's contacts with Nebraska, the source and connection of Plaintiffs' cause of action with GAFRI's contacts, the interest of Nebraska in providing a forum for disputes arising out the state, and convenience of the forum for the parties, GAFRI has sufficient contacts with Nebraska for the Court to exercise personal jurisdiction.

## CONCLUSION

For foregoing reasons, this Court should deny GAFRI's motion to dismiss.


Dated:  May 18, 2017

PEIFFER, ROSCA, WOLF, ABDULLAH, CARR & KANE
A PROFESSIONAL LAW CORPORATION
*/s/ Alan Rosca*
By: Alan Rosca
1422 Euclid Avenue, Suite 1610
Cleveland, Ohio 44115
Telephone:  (216) 570-0097
Facsimile:  (888) 411-0038
E-Mail:  arosca@prwlegal.com

SHINDLER ANDERSON GOPLERUD & WEESE P.C.
J. Barton Goplerud
Brian O. Marty
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone:  (515) 223-4567
Facsimile: (515) 223-8887
E-Mail:  goplerud@sagwlaw.com
           marty@sagwlaw.com

Thomas S. Reavely
Whitfield & Eddy, PLC
699 Walnut Street, Suite 2000
Des Moines, IA  50309
Telephone: (515) 246-5519
Facsimile: (515) 246-1474
E-mail: reavely@whitfieldlaw.com

Stephen D. Marso
3737 Woodland Avenue

8

Suite 400
West Des Moines, IA  50266
Telephone: (515) 558-01111
Facsimile: (515) 222-0318
E-Mail: marso@whitfieldlaw.com

*Counsel for Plaintiff*s

## <u>CERTIFICATE OF SERVICE</u>

       I, Alan L. Rosca, an attorney, hereby certify that on May 18, 2017, I caused copies of the foregoing to be filed with the Court's CM/ECF system, which will cause service on the following:

James R. Matthews
Brian P. Muething
Keating Muething & Klekamp PPL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
T: 513.639.3814
E: jmatthews@kmklaw.com
E: bmuething@kmklaw.com

James G. Powers
Patrick E. Brookhouser, Jr.
McGrath North Mullin & Kratz, PC LLP
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
T: 402.341.3070
E: jpowers@mcgrathnorth.com
E: pbrookhouser@mcgrathnorth.com

*Counsel for Great American Financial Resource, Inc., and American Financial Group, Inc.*

Edward D. Hotz
Pansing, Hogan Law Firm
10250 Regency Circle Suite 300
Omaha , NE 68114-3728
T: 402.397.5500
E: ehotz@pheblaw.com

*Counsel for Continental General Insurance Company*

John J. Hamill
Joseph A. Roselius
Mikiko A. Thelwell
DLA Piper LLP (US)
203 North LaSalle, Suite 1900
Chicago, Illinois 60601
T: 312.368.4000
E: john.hamill@dlapiper.com
E: joseph.roselius@dlapiper.com
E: mikiko.thelwell@dlapiper.com

Bartholomew L. McLeay
Brooke H. McCarthy
Kutak Rock LLP
1650 Farnam Street
The Omaha Building
Omaha, Nebraska 68102-2186
T: 402.231.8775
E: bart.mcleay@kutakrock.com
E: brooke.mccarthy@kutakrock.com

*Counsel for Cigna Corporation*

*/s/ Alan L. Rosca*