IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN FASTRICH and UNIVERSAL INVESTMENT SERVICES, INC., | ) ) ) | CASE NO. 8:16-CV-00487-LSC-FG3 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| CONTINENTAL GENERAL INSURANCE COMPANY, GREAT AMERICAN FINANCIAL RESOURCES, INC., AMERICAN FINANCIAL GROUP, INC. and CIGNA CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF
GREAT AMERICAN FINANCIAL RESOURCES, INC.'S
RULE 12(B)(2) MOTION TO DISMISS**

Great American Financial Resources, Inc. ("GAFRI"), by its attorneys, respectfully submits this Reply in Support of its Rule 12(B)(2) Motion to Dismiss (the "Motion").

## Summary

In their Memorandum in Opposition ("Opposition") and supporting Affidavit, Plaintiffs still do not, and cannot, establish any connection between GAFRI contacts in Nebraska and their claims for lost agent commissions, renewals, and overrides. Plaintiffs have therefore not carried their burden to establish personal jurisdiction over GAFRI in Nebraska. Plaintiffs' unsupported arguments that GAFRI controlled and directed certain actions of its subsidiary CGI are also insufficient to establish personal jurisdiction. Indeed, these arguments fail under the Eighth Circuit personal jurisdiction principles articulated in the cases Plaintiffs cite. This Court should therefore grant the Motion and dismiss Plaintiffs' claims against GAFRI for lack of personal jurisdiction.

**Argument**

As the parties seeking to establish specific personal jurisdiction over GAFRI, Plaintiffs "carr[y] the burden of proof, and that burden does not shift to the party challenging jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003); *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 819-820 (8th Cir. 2014). Plaintiffs cannot carry their burden to establish either general or specific jurisdiction over GAFRI.

**1. General Jurisdiction**

To establish general jurisdiction, Plaintiffs would have to establish that GAFRI has affiliations with Nebraska that are "so continuous and systematic as to render them essentially at home in the [] State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 920 (2011). For a corporation, that means the company's "place of incorporation and principal place of business." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). The allegations of the complaint establish that GAFRI is incorporated and has its principal place of business outside Nebraska. Plaintiffs do not contend otherwise and otherwise do not contend that the Court has general jurisdiction over GAFRI.

**2. Plaintiffs have not Established any GAFRI Contacts with Nebraska that Give Rise to their Claims.**

Plaintiffs do contend that GAFRI's contacts with Nebraska "show specific personal jurisdiction." (Opp. at 5, Doc. 49 at PageID 148.) But because none of the limited contacts with Nebraska that they identify are related to the causes of action they pursue, their attempt to establish specific jurisdiction falls short.

As the Supreme Court reiterated less than one month ago in *Bristol-Myers Squibb Co. v. Superior Court*, "[s]pecific jurisdiction is very different" from general jurisdiction, and to be

established "the *suit* must aris[e] out of or relat[e] to the defendant's contacts with the *forum.*" (internal quotations and citations omitted) (emphasis in original). 137 S. Ct. 1773, 198 L. Ed. 2d 395, at *403 (2017). In other words, "there must be an 'affiliation between the forum and the underlying controversy, principally [an] activity or occurrence that takes place in the forum State,'" and "[w]here there is no such connection, specific jurisdiction is lacking regardless of a defendant's unconnected activities in the State." *Id.* at *404 (quoting *Goodyear*, 564 U.S. at 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796.

In *Bristol-Myers Squibb*, the Supreme Court dismissed claims by nonresident plaintiffs against a non-resident drug manufacturer because there was no "adequate link between the [defendant's contacts in the] State and the nonresidents' claims." *Id.* Even though the defendant drug manufacturer sold the allegedly harmful drug in the forum state and engaged in other various business activities within the forum state – including running five research laboratories which employed around 160 employees, employing around 250 sales representatives, maintaining a small advocacy office, and contracting with a distribution company in the forum state to distribute the allegedly harmful drug on a national basis – the nonresident plaintiffs did not allege that they obtained the drug in the forum state or were injured in the forum state. The Supreme Court reversed the finding of specific personal jurisdiction because there was no "connection between the forum and the specific claims at issue," and exercising personal jurisdiction based upon "extensive forum contacts" unrelated to the specific claims "resembles a loose and spurious form of general jurisdiction." *Id.*

Here, as in *Bristol-Myers Squibb*, the nonresident *Indiana* Plaintiffs (Compl. at ¶¶ 14-15, Doc. 1 at PageID 3) offer no evidence that "the *suit*" arises out of any GAFRI "contacts with the *forum*." *Bristol-Myers Squibb*, 137 S. Ct. 1773, 198 L. Ed. at *403 (emphasis in original). This

requires dismissal. *Siegfried v. Boehringer Ingelheim Pharms., Inc.*, Dist. No. 4:16-cv-1942, 2017 U.S. Dist. LEXIS 99006 (E.D. Mo. June 27, 2017) (following *Bristol-Myers Squibb* and dismissing claims by nonresident plaintiffs against defendants that did not arise out of, or relate to, defendants' activities in the forum state).

The only specific contact with Nebraska that Plaintiffs cite in their opposition are two statements from GAFRI's application to the Nebraska Department of Insurance for approval to acquire CGI. (Doc. 49-2.) Plaintiffs argue that the application proves GAFRI "install[ed] new officers and directors" when it acquired CGI and "changed the way CGI operated and sold products by having CGI and its agents exit the major medical business." (Opp. at 5, Doc. 49 at PageID 148.)

This statement of intent is not evidence that GAFRI actually controlled or dictated CGI to take these actions after the acquisition. But even if it did change the composition of company management, that action has no connection to Plaintiffs' claims for allegedly unpaid insurance agent commissions.

Second, even if Plaintiffs had established that GAFRI controlled or directed CGI to alter its "post-acquisition Board of Directors" or "change [its] business focus" (Doc. 49-2, at PageID 158), this does not establish personal jurisdiction over GAFRI based on the companies' parent/subsidiary relationship. Plaintiffs rely upon *Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 196 F. Supp. 3d 985 (D. Minn. July 12, 2016) to argue that "this Court has personal jurisdiction over GAFRI based on specific jurisdiction as Plaintiffs' claims arise from and relate to GAFRI's conduct and its close, synergistic relationship with its subsidiary, CGI, in Nebraska." (Opp. at 5-6, Doc. 49 at PageID 148-49.)  In *Goodbye Vanilla*, the court summarized the "two central principles" from Eighth Circuit precedent regarding "whether a court can

exercise personal jurisdiction over the nonresident parent company of a local subsidiary," stating:

> First, for a court to have personal jurisdiction over the nonresident parent company based solely on the actions of its local subsidiary, the plaintiff must be able to show it could pierce the subsidiary's corporate veil by establishing that the local subsidiary is the "alter ego" of the nonresident parent company. *See Epps*, 327 F.3d at 649. Second, even without the ability to pierce the subsidiary's corporate veil, a court may be able to assert personal jurisdiction over a nonresident parent corporation based on the parent corporation's own actions in the forum state. *See Anderson v. Dassault Aviation*, 361 F.3d 449, 452-53 (8th Cir. 2004). When considering the nonresident parent corporation's actions in the forum state, one factor to consider is whether the parent and subsidiary have a "close, synergistic" relationship that goes beyond "mere ownership." *Id.* at 453-54.

*Id.* at 989-990 (emphasis added).

Here, like in *Goodby Vanilla*, neither of these two principles are satisfied. Even if GAFRI altered CGI's "post-acquisition Board of Directors" and "change[d] [its] business focus" – as Plaintiffs allege – this certainly does not establish that GAFRI "so controlled and dominated the affairs of [CGI] that the latter's corporate existence was disregarded so as to cause [CGI] to act as [GAFRI's] alter ego." *Goodbye Vanilla*, 196 F. Supp. 3d at 990.[1] Plaintiffs certainly offer no evidence of this sufficient to carry their burden on that issue.

Moreover, as discussed above, GAFRI's "own actions in the forum state" are also not sufficient to establish personal jurisdiction. The court in *Goodbye Vanilla* emphasized that a

---

[1] As the Nebraska Supreme Court explained, "the doctrine of separate corporate existence does not break down merely because a corporation is a subsidiary, even if fully owned by the parent," nor does "[m]erely taking an active part in the management of a corporation [] automatically constitute control sufficient to pierce the corporate veil." *Global Credit Servs. v. AMISUB*, 244 Neb. 681, 687, 690 (1993). Furthermore, "[a]s uniformly held, the existence of interlocking directors is not, in and of itself, sufficient without direct evidence of specific manipulative conduct to warrant the piercing of the corporate veil." *Id.* at 689 (citations omitted). "To pierce the corporate veil between a parent and a subsidiary, a plaintiff must show more than the mere sharing of services between the two corporations," but rather must "show that [the parent] totally dominated [the subsidiary] to such extent that [the subsidiary] had no separate corporate existence and functioned solely to achieve the purposes of the dominate corporation." *Id.* at 687-688. Some relevant factors include, among others, grossly inadequate capitalization or insolvency evidencing that the parent corporation has "such a financial interest in, or total domination over, the other as to permit the corporate existence of [the subsidiary] corporation to be ignored." *Id.* at 690.

"close, synergistic" relationship between the parent and subsidiary – which Plaintiffs have not even established – does "*not transfer the subsidiary's contacts to the parent*, but instead is relevant in determining *whether the parent has its own contacts with the forum state.*" *Id.* at 991 (emphasis added.) The only specific contacts Plaintiffs have established GAFRI had with the state of Nebraska are two statements about future "plans" for CGIC in an application to the Nebraska Department of Insurance. (Doc. 49-2.) These "contacts" are tenuous, bear no relation to Plaintiffs' claims, and are insufficient to establish personal jurisdiction.

Finally, in considering Plaintiffs' claim to personal jurisdiction over GAFRI, the Court should see that Plaintiffs are playing fast and loose with what is actually alleged in the complaint. Plaintiffs have a section of their opposition memorandum where they contend that GAFRI purposefully directed wrongful conduct at citizens of Nebraska. (Opp. at 4, Doc. 49 at PageID 147.) Both sides of this contention are unsupportable. There is *no* evidence before the Court that this alleged wrongful conduct was directed to a Nebraska citizen. Plaintiffs, for their part, are non-residents, making this case just like *Bristol-Myers Squibb*. And when Plaintiffs allege wrongful conduct by GAFRI and cite to the complaint, they refer to sections of the complaint that refer to GAFRI "and/or" other defendants. And its notable that where the complaint alleges there is a forum selection clause that compels this case to be in Nebraska, Plaintiffs make no mention of such a clause in their brief.

3. **Plaintiffs' Arguments in Favor of Nebraska's Interest in Deciding the Case and Convenient Locale, Even if True, do not Outweigh The Constitutional Due Process Requirements for Personal Jurisdiction, Which Are Not Satisfied.**

Plaintiffs argue that because Nebraska has an interest in ruling on the claims in this case, because one of the parties would need to travel out of state no matter where the lawsuit was filed (whether in Nebraska, Indiana, or Ohio), and because GAFRI did not object to personal

jurisdiction in Nebraska in a previous lawsuit, these factors should weigh in favor of exercising personal jurisdiction. (Opp. at 7, Doc. 49 at PageID 150.) However, "'[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment.'" *Bristol-Myers Squibb*, 198 L. Ed. at *404 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)). Moreover, the idea that *Nebraska* is the proper forum for an Indiana v. Ohio lawsuit fails the logic test.

## Conclusion

For the foregoing reasons, and the reasons stated in GAFRI's Motion and Memorandum in Support [Doc. 36], this Court should dismiss Plaintiffs' claims against GAFRI for lack of personal jurisdiction.

Respectfully Submitted,

s/*Patrick E. Brookhouser, Jr.*

James G. Powers, Neb. I.D. # 17780
jpowers@mcgrathnorth.com
Patrick E. Brookhouser, Jr., Neb. I.D. # 19245
pbrookhouser@mcgrathnorth.com
MᴄGʀᴀᴛʜ Nᴏʀᴛʜ Mᴜʟʟɪɴ & Kʀᴀᴛᴢ, PC LLO
First National Tower, Suite 3700
1601 Dodge Street
Omaha, NE 68102
Tel: 402.341.3070

-and-

- 7 -

James R. Matthews (*pro hac vice*)
jmatthews@kmklaw.com
Brian P. Muething (*pro hac vice*)
bmuething@kmklaw.com
KEATING MUETHING & KLEKAMP PLL
One East Fourth Street, Suite 1400
Cincinnati, OH 45202
(513) 579-6507

*Attorneys for Defendant Great American Financial Resources, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 17, 2017, I caused true and correct copies of the foregoing to be filed electronically using the Court's CM/ECF system and to thereby be served upon all registered participants identified in the Notice of Electronic Filing in this matter on this date.   This document is available for viewing and downloading on the CM/ECF system.


*s/Patrick E. Brookhouser, Jr.*
Patrick E. Brookhouser, Jr.


7713674.2