# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN FASTRICH, and UNIVERSAL INVESTMENT SERVICES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> CONTINENTAL GENERAL INSURANCE COMPANY, and GREAT AMERICAN FINANCIAL RESOURCE, INC., <br><br> Defendants. | 8:16CV487 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 35, filed by Defendant Great American Financial Resource, Inc. ("GAFRI"), and on the Motion to Dismiss for Failure to State a Claim, ECF No. 32, filed by Defendants GAFRI and Continental General Insurance Company ("CGI"). For the reasons stated below GAFRI's Motion to Dismiss for Lack of Personal Jurisdiction will be granted and the Motion to Dismiss for Failure to State a Claim will be granted, in part, and denied, in part.

## BACKGROUND

The following facts are those alleged in the Complaint, ECF No. 1, which are assumed true for purposes of the Motion to Dismiss, as well as those contained in the evidence submitted to support personal jurisdiction over GAFRI.

This is a class action brought by John Fastrich and his insurance agency, Universal Investment Services, Inc., on behalf of themselves and on behalf of "[a]ll current and former regional managers, general agents, associate general agents, and

agents of CGI . . . who have lost commissions, renewals, and/or overrides as a result of Defendants' wrongful conduct . . ." (John Fastrich, Universal Investment Services, Inc., and the purported class will be collectively referred to as "Plaintiffs"). Complaint, ECF No. 1, Page ID 7 ¶ 42. According to the Complaint, Plaintiffs entered into contracts with CGI to sell CGI's insurance products to individual customers. These products included Medicare supplements, long-term care and senior life policies, and annuities. Pursuant to their contracts with CGI, Plaintiffs were to receive compensation in the form of commissions, renewals, and overrides on the various insurance products they sold.

Plaintiffs worked in a four-level hierarchy of regional managers, general agents, associate general agents, and agents. Plaintiffs would become the "agent of record" any time they sold an insurance product to a customer and "took the original information" from the customer. Complaint, ECF No. 1, Page ID 2 ¶ 6. If an agent of record received less than $600 in renewals and overrides in a one-year period, however, their commissions, renewals, and overrides would revert to the next-highest agent in the hierarchy. This is referred to as non-vesting.

CGI was a domestic insurer organized under Nebraska law and the wholly-owned subsidiary of Ceres Group, Inc. ("Ceres"). In 2006, GAFRI applied to the Nebraska Department of Insurance to acquire all the shares of Ceres and the Department approved the acquisition. Sometime after GAFRI finalized the acquisition of Ceres, and thereby CGI, GAFRI and CGI began contacting existing insurance policyholders and offering them new, less expensive insurance products without giving Plaintiffs the opportunity to sell the new products. As a result, the original insurance

policies that Plaintiffs sold on CGI's behalf were cancelled and new insurance products were marketed and issued by other agents.

Plaintiffs allege that "[regardless whether a policy was replaced by a new policy by in-house marketing organizations and/or selected outside agents, Plaintiffs remain the agents of record for the purpose of receiving commissions, renewals, and/or overrides." Complaint, ECF No. 1, Page ID 5 ¶ 31. Yet Plaintiffs were not paid the promised commissions, renewals, and overrides they claim they were entitled to receive. Plaintiffs also assert that they were contractually entitled to "commissions on premium increases on long term care policies written before January 2000," but have been denied those commissions as well. Furthermore, when CGI and GAFRI issued the new policies, it caused several Plaintiffs to become non-vested, but CGI and GAFRI retained the amounts that should have reverted to the next-highest agent in the hierarchy.

Plaintiffs have brought claims against CGI and GAFRI for breach of contract, tortious interference with a business relationship or expectancy, and unjust enrichment. GAFRI argues the Court should dismiss it from this action because it is not subject to the Court's personal jurisdiction. CGI and GAFRI both argue Plaintiffs' claims should be dismissed for failure to state a claim upon which relief can be granted.

## STANDARD OF REVIEW

**I. Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2)**

To survive a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must plead "sufficient facts 'to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *K-V*

*Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). When jurisdiction is challenged, the "'nonmoving party need only make a prima facie showing of jurisdiction.'" *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011) (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)). The nonmoving party's prima facie showing is analyzed "not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). "'[T]he court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party.'" *Id.* (quoting *Dakota Indus., Inc.*, 946 F.2d at 1387).

## II. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative

4

level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555 & 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

### I. Personal Jurisdiction

GAFRI argues it is not subject to the Court's personal jurisdiction. In determining whether personal jurisdiction over a nonresident defendant exists, the Court must determine whether: (1) the requirements of the Nebraska long-arm statute are satisfied; and (2) the exercise of jurisdiction is permitted by the Due Process Clause of the

5

Fourteenth Amendment. *See Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007). Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, has been interpreted to extend jurisdiction over nonresident defendants to the fullest degree allowed by the Due Process Clause of the United States Constitution. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). Thus, the Court need only determine whether the assertion of jurisdiction offends constitutional limits.

"The touchstone of the due-process analysis remains whether the defendant has sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Viasystems, Inc. v. EBM-Papst St. GEorgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The Supreme Court has recognized two theories for evaluating personal jurisdiction: general and specific jurisdiction." *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Dever*, 380 F.3d at 1073 (quoting *Helicopteros*, 466 U.S. at 415-416). On the other hand, under the theory of specific jurisdiction, "the injury giving rise to the lawsuit [must have] occurred within or had some connection to the forum state." *Dever*, 380 F.3d at 1073 (citing *Helicopteros*, 466 U.S. at 414). In other words, a court will have specific jurisdiction over a cause of action "arising from or related to a defendant's actions within the forum state." *Bell Paper Box*, 22 F.3d 816, 819 (8th Cir. 1994).

6

Under either theory, the defendant must have committed "'some act by which the defendant purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Dever*, 380 F.3d at 1073 (quoting *Denckla*, 357 U.S. at 253). A defendant's "purposeful availment must be sufficient to provide the defendant with fair warning that his activities might result in his being haled into court in that jurisdiction." *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006) (citing *Porter v. Berall*, 293 F.3d 1073, 1075 (8th Cir. 2002)). In other words, the defendant's contacts with the forum state must not be "random," "fortuitous," "attenuated," or the result of the "unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (quotations and citations omitted). A defendant's minimum contacts with the forum state must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit. *Pecoraro*, 340 F.3d at 562.

Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, such contacts must be analyzed in light of other factors to determine whether the exercise of personal jurisdiction over the nonresident defendant comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476. The factors, as articulated by the Eighth Circuit, are: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *K-V Pharm.*, 648 F.3d at 592. The fourth and fifth factors are secondary and not determinative. *Id*. In applying these factors, the central inquiry is the "relationship

among the defendant, the forum, and the litigation." *Calder v Jones*, 465 U.S. 783, 788 (1984).

GAFRI is an Ohio corporation with its principal place of business in Texas. When GAFRI acquired Ceres, including its subsidiary CGI, in 2006, CGI was a domestic insurer organized under, and governed by, Nebraska law and had its principal place of business in Nebraska. At the time this lawsuit was filed, however, CGI was alleged to be an Ohio corporation with its principal place of business in Texas. It is unclear when CGI's principal place of business moved from Nebraska to Texas, but the Complaint states "CGI's business headquarters were located in this District [Nebraska] at all relevant times . . . ." Pl.'s Complaint, ECF No. 1, Page ID 3 ¶ 13. There are no allegations or evidence regarding Ceres's state of incorporation or principal place of business.

Plaintiffs assert GAFRI's conduct and "close, synergistic relationship" with CGI subject it to specific personal jurisdiction in Nebraska. Pl.'s Br. Mot. Dismiss, ECF No. 49, Page ID 148; *Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 596 (8th Cir. 2011) (citing *Anderson v. Dassault Aviation*, 361 F.3d 449, 452-53 (8th Cir. 2004) (explaining that a "close, synergistic" relationship between a foreign corporation and its in-state subsidiary does not transfer the subsidiary's contacts to the parent, but instead is relevant in determining whether the parent has its own contacts with the forum state); *See, e.g., Goodbye Vanilla, LLC v. Aimia Proprietary Loyalty U.S. Inc.*, 196 F. Supp. 3d 985, 989-90 (D. Minn. 2016) (explaining Eighth Circuit's approach to analyzing district courts' exercise of personal jurisdiction over parent corporations) (citing *Anderson*, 361 F.3d at 452-53 & *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d

642, 648 (8th Cir. 2003)). Yet Plaintiffs have not demonstrated that GAFRI had meaningful contacts with Nebraska beyond its ownership of CGI; and Plaintiffs' conclusory allegations that GAFRI controlled CGI and had a "close, synergistic relationship" with CGI are insufficient to confer this Court with personal jurisdiction.

The fact that CGI had its principal place of business in Nebraska does not, by itself, confer personal jurisdiction over GAFRI. *See Epps*, 327 F.3d at 649-50 (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925); *see also Shaffer v. Heitner*, 433 U.S. 186, 216 (1977) (concluding ownership of shares in a corporation located in a particular forum is not purposeful availment of that forum). Beyond its "mere ownership" of Ceres and CGI, GAFRI has done nothing to avail itself of the Nebraska forum. *Anderson*, 361 F.3d at 452 (finding personal jurisdiction over a parent corporation because its relationship with a subsidiary located in the forum went "well beyond mere ownership"). Plaintiffs point to GAFRI's alleged conduct of "contacting existing [CGI] policyholders and replacing the in-force policies with the new products [insurance policies]," harming Plaintiffs who are Indiana residents. Plaintiffs do not allege, however, that GAFRI ever contacted a Nebraska resident or replaced a Nebraska resident's existing CGI insurance policy. Nor do Plaintiffs allege that they had any Nebraska clients.

Plaintiffs also point to GAFRI's representations to the Nebraska Department of Insurance that it intended to install GAFRI personnel in officer and director positions at CGI upon consummation of the acquisition, and to GAFRI's representation that it planned to have CGI exit the major medical business. However, there are no allegations or evidence that GAFRI actually undertook either of these courses of action. Although

9

Plaintiffs argue GAFRI controlled and directed CGI's business and that the two entities maintained a close, synergistic relationship, they provide no alleged facts that detail such a relationship. The broad allegation that GAFRI replaced existing CGI insurance policies, on which Plaintiffs were agents of record, with new policies, does not establish a close, synergistic relationship between GAFRI and CGI. Nor does it establish purposeful availment of this forum.

Considering the nature, quality, and quantity of the foregoing contacts, Plaintiffs have also failed to establish that GAFRI has sufficient "minimum contacts with [Nebraska] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Viasystems, Inc.*, 646 F.3d at 594 (quoting *International Shoe*, 326 U.S. at 316 (1945); *K-V Pharm*, 648 F.3d at 592 (explaining that the nature, quality, quantity, and relationship of the cause of action to the contacts are the primary factors to consider). The Court cannot conclude that the alleged facts and supporting evidence "support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *K-V Pharm.*, 648 F.3d at 591-92. As such, the Court lacks the power to "enter a valid judgment imposing a personal obligation or duty" upon GAFRI "in favor of the plaintiff" and GAFRI will, therefore, be dismissed from this action. *Viasystems*, 646 F.3d at 592.

## II. Breach of Contract Claim

Defendants argue Plaintiffs' claim for breach of contract must be dismissed because (1) they have not sufficiently alleged a contractual promise, (2) they have alleged speculative damages, and (3) they have "lumped together" all of the defendants in their allegations. Def.'s Br. Mot. Dismiss, ECF No. 33, Page ID 92.

Under Nebraska law,[1] "the plaintiff must plead the existence of a promise, its breach, damages, and compliance with any conditions precedent that activate the defendant's duty" in order to state a claim for breach of contract. *Kotrous v. Zerbe*, 846 N.W. 2d 122, 126 (Neb. 2014).

With respect to the promise element, CGI argues Plaintiffs made generalized allegations of the existence of contracts, failed to attach the contracts, failed to cite any specific provisions therein, and failed to allege when or where the contracts were consummated. It is not necessary that claimants attach copies of the contract to the complaint or recite contractual provisions verbatim. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1235 (3d ed.) ("In pleading the existence of an express written contract, the plaintiff . . . may set it forth verbatim in the complaint, attach a copy as an exhibit, or plead it according to its legal effect."); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating "documentary evidence generally is not required at the pleading stage"). However, "[i]n breach of contract actions, . . . the complaint must, at minimum, cite the contractual provision allegedly violated." *Gillis v. Principia Corp.*, 832 F.3d 865, 872 n.11 (8th Cir. 2016) (alterations in original) (quoting

---

[1] Plaintiffs state they "do not concede that Nebraska law applies to their claims." Pl.'s Br. Mot. Dismiss, ECF No. 50, Page ID 179. However, they cite to Nebraska law to support their arguments that each of their claims is sufficiently stated under Fed. R. Civ. P. 12(b)(6) and they have not advocated for the application of another state's law. Defendants also do not advocate for the application of another state's law. As such, the Court has not been presented with a conflict of laws issue at this stage of the litigation and will, therefore, apply Nebraska law in evaluating whether Plaintiffs' allegations state plausible claims. *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003) (citing *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits"); *see Shah v. Inter-Cont'l Hotel Chicago Operating Corp.*, 314 F.3d 278 (7th Cir. 2002) (explaining it is not necessary for plaintiffs to plead the applicable state law in order to survive a Rule 12(b)(6) motion to dismiss); *Fisher v. Great Socialist People's Libyan Arab Jamahiriya*, 541 F. Supp. 2d 46, 52 (D.D.C. 2008) (explaining that the federal pleading standard does not require a complaint to set forth choice of law contentions or to specify a particular state out of which each claim arises).

*Cummins Law Office, P.A. v. Norman Graphic Printing Co.*, No. CIV. 11-2061 RHK/FLN, 2012 WL 3430447, at *3 (D. Minn. Aug. 14, 2012); *see Doe v. Bd. of Regents of Univ. of Neb.*, 788 N.W.2d 264, 295 (Neb. 2010) ("At the pleading stage, the complaint must "point to an identifiable contractual promise that the defendant[ ] did not honor.").

According to the Complaint, Plaintiffs had "contractual agreements" with CGI that included provisions which promised them "commissions, renewals, and/or overrides" on the insurance policies they sold.[2] Complaint, ECF No. 1, Page ID 1 ¶ 3. Plaintiffs further allege that they sold several insurance policies, but were deprived of the promised commissions, renewals, or overrides because GAFRI and CGI decided to replace those existing policies with new policies that did not include Plaintiffs as agents. According to Plaintiffs, this course of action constituted a breach of the contractual provisions contained in their agreements. The Complaint also asserts that the original agents of record were contractually entitled to commissions, renewals, and overrides even if their contract to represent CGI was terminated. Complaint, ECF No. 1, Page ID 2, ¶ 10.

---

[2] See the following allegations:

> Pursuant to contractual agreements with CGI and/or Cigna, licensed agents are entitled to compensation known in the industry as 'commissions,' 'renewals,' and/or 'overrides' on insurance products sold by licensed agents in their hierarchy.

Complaint, ECF No. 1, Page ID 1 ¶ 3.

> Pursuant to the CGI and, upon information and belief, Cigna contracts, an agent of record is entitled to commissions, overrides, and/or renewals even if his or her contract to represent the company is terminated.

*Id.* at Page ID 2 ¶ 10.

> The contracts between Plaintiffs, on one side, and CGI and/or Cigna, on the other side provided that the agents of record were to receive commissions on premium increases on long term care policies written before January 2000.

*Id.* at Page ID 6 ¶ 34.

Thus, Plaintiffs have identified a particular promise contained in the alleged contracts between them and CGI. There is no requirement that Plaintiffs provide evidentiary proof of the contract or specific provisions at this stage of the litigation. It is sufficient that they alleged and identified a contractual promise to commissions, renewals, and overrides on the policies they sold. *Kotrous*, 846 N.W. 2d at 126.

With respect to the damages element, CGI argues Plaintiffs' "breach of contract claim fails [because] it hinges on a completely speculative theory of causation and damages." Def.'s Br. Mot. Dismiss, ECF No. 33, Page ID 93. Under the pleading standard articulated in *Twombly*, however, Plaintiffs' allegation of damages is not speculative. 550 U.S. at 555-556. At the pleading stage, the Court assumes the veracity of Plaintiffs' allegation that their contracts with CGI entitled them to commissions, renewals, and overrides and that they have been deprived of that compensation by CGI. Accordingly, Plaintiffs' claim for damages in the form of lost commissions, renewals, and overrides is not speculative.

CGI also argues that Plaintiffs have "violated the prohibition against lumping defendants together" in their Complaint. Def.'s Br. Mot. Dismiss, ECF No. 33, Page ID 92. The Complaint should not be dismissed on that basis, however, because the only remaining defendant is CGI. Order of Dismissal, ECF No. 51 (dismissing Cigna Corporation and American Financial Group, Inc.); *see* discussion *supra* Section I. Personal Jurisdiction (dismissing GAFRI). Also, it is clear from the allegations that Plaintiffs entered into contracts with CGI, specifically, and sued the dismissed parties for breach of contract based on their potential liability in connection with their corporate interests and affiliations with CGI. *See* Complaint, ECF No. 1, Page ID 1 ¶ 3, Page ID 3-

13

4 ¶ 14-21. Thus, the Complaint is not lacking in specificity and it provides CGI with fair notice of the factual basis for the claims against it. *See, e.g., Tatone v. Sun Tr. Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (2012) (holding that "[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant").

Plaintiffs have pled sufficient facts to support a plausible claim for breach of contract. Their allegations that they were entitled to receive commissions, renewals, and overrides, and that CGI failed to pay Plaintiffs said commissions, renewals, and overrides, causing them to suffer financial damage, is sufficient factual "content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *i.e.*, breach of contract. *Barton*, 820 F.3d at 964 (*Iqbal*, 556 U.S. at 678).

### III. Tortious Interference with a Business Relationship or Expectancy

CGI argues Plaintiffs have failed to state a claim for tortious interference with a business relationship or expectancy because CGI is not a true third-party interferer and because Plaintiffs have not alleged unjustified conduct.

To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove the following elements:

> (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference cause the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted."

*Recio v. Evers*, 771 N.W.2d 121, 131 (Neb. 2009). With respect to contractual relationships, a party to a contract cannot tortiously interfere with that contract as a matter of law. *Huff v. Swartz*, 606 N.W.2d 461, 467-68 (Neb. 2000). The interferer must be a third party. *Id.*; *Bussing v. COR Clearing, LLC*, 20 F. Supp. 3d 719, 737 (D. Neb. 2014). The same principle applies to non-contractual business relationships as well—a party cannot tortuously interfere with its own business relationship. *Bussing*, 20 F. Supp. 3d at 737. In the insurance industry context, independent insurance agents, like Plaintiffs, may have business relationships with their clients that are independent of the client-policyholders' contracts with an insurer, and an insurer can tortiously interfere with such an independent relationship. *See McNeil v. Sec. Benefit Life Ins. Co.*, 28 F.3d 891, 894 (8th Cir. 1994) (citing *Benny M. Estes & Assoc. v. Times Ins. Co.*, 980 F.2d 1228, 1231 (8th Cir. 1992) (applying Arkansas law).

The alleged facts, however, do not support a plausible claim for tortious interference with a business relationship or expectancy. Plaintiffs allege they had contractual and business relationships with their clients, who were CGI insurance policyholders, and that CGI tortiously interfered with those relationships. Applying the principal that the interferer must be a third party independent of the plaintiff's business relationship, the Eighth Circuit has held that there can be no tortious interference "as a matter of law" where the insurance agent-plaintiff "had no relationship with the buyers of [the] defendant's insurance policies that was independent of [his] role as an agent acting on behalf of the defendant companies." *Cutter v. Lincoln Nat. Life Ins. Co.*, 794 F.2d 352, 356-57 (8th Cir. 1986). Plaintiffs' Complaint alleges no independent business relationship with their clients beyond the fact that Plaintiffs brokered their clients'

15

purchase of CGI's insurance policy products. The Plaintiffs' claim for tortious interference with a business relationship or expectancy will, therefore, be dismissed because CGI is not a true third-party interferer. *See New York Life Ins. Co. v. Grant*, 57 F. Supp. 3d 1401, 1416 (M.D. Ga. 2014) (dismissing tortious interference claim for failure to state a claim where the defendant-insurer was not a "stranger to the business relations" the plaintiff-insurance agent shared with its clients); *McNeil*, 28 F.3d at 894 (citing *Cutter*, 794 F.2d at 357 (explaining an agent may not claim tortious interference where the "principal is overseeing contracts made by the agent in the principal's behalf")).

**IV. Unjust Enrichment**

CGI argues Plaintiffs' claim for unjust enrichment, which is a quasi-contract claim, must be dismissed because they have also alleged the existence of an express contract and the breach thereof. CGI also argues that Plaintiffs have alleged insufficient facts to support an unjust enrichment claim.

CGI correctly argues that, under Nebraska law, Plaintiffs cannot *recover* damages on claims for unjust enrichment and express contract "when an enforceable, express contract exists between the parties regarding the same subject matter which underlies the relief requested." *Strauss v. Centennial Precious Metals, Inc.*, 4:12CV3213, 2013 WL 12128703, *5 (D. Neb. Jan. 23, 2013) (citing *City of Scottsbluff v. Waste Connections of Neb., Inc.*, 809 N.W.2d 725, 739-40 (Neb. 2011)). However, Federal Rule of Civil Procedure 8(d) permits parties to plead in the alternative, and the "right to plead and argue in the alternative is a matter of procedure and, as such, is governed by federal law." *Koedding v. Slaughter*, 481 F. Supp. 1233, 1237 (E.D. Mo.

1979), *aff'd*, 634 F.2d 1095 (8th Cir. 1980) (citing *Hanna v. Plumer*, 380 U.S. 460 (1965); Fed. R. Civ. P. 8(d) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *see, e.g.*, *Cummins Law Office, P.A. v. Norman Graphic Printing Co. Ltd.*, 826 F. Supp. 2d 1127, 1130 (D. Minn. 2011) (explaining that Courts routinely permit the assertion of contract and quasi-contract claims together) (citing *Turley Martin Co. v. Gillman Paper Co.*, 905 F.2d 235, 237 (8th Cir. 1990)). Therefore, Plaintiffs' quasi-contract claim for unjust enrichment will not be dismissed simply because it was pled in the alternative to their breach of contract claim.

Plaintiffs have pled sufficient facts to support a plausible claim for unjust enrichment. To recover on an unjust enrichment claim, "the plaintiff must show that (1) the defendant received money, (2) the defendant retained possession of the money, and (3) the defendant in justice and fairness ought to pay the money to the plaintiff." *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 302 (Neb. 2006) (citing *Kissinger v. Genetic Eval. Ctr.*, 618 N.W.2d 429 (Neb. 2000). "Unjust enrichment is a flexible concept," "[b]ut it is a bedrock principle of restitution that unjust enrichment means a 'transfer of a benefit without adequate legal ground.'" *Waste Connections of Neb., Inc.*, 809 N.W.2d at 743 (quoting Restatement (Third) of Restitution and Unjust Enrichment § 1, comment *b.* at 6). The Complaint alleges Plaintiffs sold CGI's insurance products and that CGI wrongfully and unfairly received and retained the commissions, renewals, and overrides associated with those products, which Plaintiffs claim should have been paid to them. Taken as true, the foregoing facts include content that allows the Court to draw the reasonable inference that Plaintiffs transferred a benefit to CGI by selling its insurance products and that CGI unfairly retained and refused to pay Plaintiffs the associated

17

commissions, renewals, and overrides. Accordingly, Plaintiffs have pled facts to support a plausible claim for unjust enrichment.

## V. Punitive Damages and Attorney's Fees

CGI also argues that Plaintiffs' demands for punitive damages, Complaint, ECF No. 1, Page ID 7 ¶ 41, and for reasonable attorney's fees, *id.* at Page ID 11 ¶ 2, should be stricken from the Complaint because neither is recoverable under Nebraska law. CGI also argues Plaintiffs' allegation that CGI engaged in "unfair marketing practices" should be stricken. Complaint, ECF No. 1, Page ID 6 ¶ 39.

A motion under Rule 12(f),[3] not Rule 12(b)(6), is the appropriate means to strike material from the Complaint and CGI has not made a Rule 12(f) motion. *See Hill v. United States*, 751 F. Supp. 909, 910-11 (D. Colo. 1990) ("Rule 12(b)(6) is not the appropriate vehicle to strike objectionable portions of a complaint."). Further, "[s]triking a party's pleading . . . is an extreme and disfavored measure." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). At this stage of the litigation, it is not certain whether Nebraska law ultimately will apply to Plaintiffs' breach of contract and unjust enrichment claims. *See supra* note 1 and accompanying text. Thus, striking Plaintiffs' demands for punitive damages and attorney's fees from the Complaint based on Nebraska law would be premature. With respect to Plaintiffs' allegation of unfair marketing practices, CGI has not demonstrated this allegation is "redundant, impertinent, or scandalous." Fed. R. Civ. P. 12(f). The Court will not strike those allegations from the Complaint at this time.

---

[3] Federal Rule of Civil Procedure 12(f) provides "[t]he Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

Accordingly,

IT IS ORDERED:

1. The Motion to Dismiss for Lack of Personal Jurisdiction, ECF No. 35, filed by Defendant Great American Financial Resource, Inc. ("GAFRI") is granted;

2. GAFRI is dismissed from this action;

3. The Clerk will remove GAFRI from the caption;

4. The Motion to Dismiss for Failure to State a Claim, ECF No. 32, filed by Defendants Continental General Insurance Company ("CGI") and GAFRI is granted, in part, as follows:

    a. Plaintiffs' claim for tortious interference with a business relationship or expectancy is dismissed, with prejudice.

    b. The Motion is otherwise denied.

5. The Motion for Leave to File a Supplemental Brief, ECF No. 57, is denied.

6. Defendant CGI will respond to the remaining allegations in Plaintiffs' Complaint on or before September 5, 2017.

Dated this 21st day of August, 2017.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge