IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **JOHN FASTRICH and UNIVERSAL INVESTMENT SERVICES, INC.,** <br><br> **Plaintiffs,** <br><br> vs. <br><br> **CONTINENTAL GENERAL INSURANCE COMPANY,** <br><br> **Defendant** | CASE NO. 8:16-CV-00487 <br><br><br> **FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

**COME NOW** Plaintiffs, on behalf of themselves and all other similarly situated, by and through their undersigned counsel, and in support of their Class Action Complaint and Jury Demand state to the Court the following:

## SUMMARY OF ALLEGATIONS

1. Plaintiffs are current and former regional managers, general agents, associate general agents, and/or agents of Continental General Insurance Company ("CGI") and/or, after August 2012, Loyal American Life Insurance Company ("LALIC") and American Retirement Life Insurance Company ("ARLIC").

2. Plaintiffs were responsible for, among other things, selling insurance products offered by CGI and/or, upon information and belief, LALIC and/or ARLIC.

3. Pursuant to contractual agreements with CGI and/or LALIC and/or ARLIC, licensed agents are entitled to compensation known in the industry as "commissions", "renewals" and/or "overrides" on insurance products sold by licensed agents in their hierarchy.

4. A hierarchy consists of four levels of contracting—regional manager, general agent, associate general agent, and agent.

5.  As defined in the contracts, overrides are the difference between the compensation paid to individuals in the hierarchy. Regional managers and/or general agents are entitled to renewals or overrides from the agents in their hierarchy.

6.  A licensed agent is entitled to commissions on insurance products that he or she sells and becomes agent of record. Whenever an insurance product is sold, the agent who took the original information is considered the agent of record.

7.  The agent of record is entitled to commissions and/or renewals on in-force policies and/or replacement policies. In the case of CGI and, upon information and belief, LALIC and/or ARLIC, if an agent of record receives less than $600 of renewals and/or overrides in a 12-month period, the company can terminate his or her commissions, renewals, or overrides on all in-force policies. This circumstance is known in the industry as non-vesting.

8.  In the case of non-vesting, the commissions, renewals, and/or overrides then revert to the next agent up in the hierarchy.

9.  If an agent of record receives more than $600 of renewals and/or overrides in a 12-month period, the commissions and/or renewals are paid to the agent. This is known as vesting.

10. Pursuant to the CGI and, upon information and belief, LALIC and/or ARLIC contracts, an agent of record is entitled to commissions, overrides, and/or renewals even if his or her contract to represent the company is terminated.

11. In the case where commissions, renewals, and/or overrides revert to the next agent up in the hierarchy, that agent then becomes the agent of record. The agent of record changes each time commissions and renewals revert up the hierarchy due to non-vesting.

## JURISDICTION AND VENUE

12. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005). With respect to CAFA: (a) the amount in controversy exceeds the jurisdictional amount of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2); (b) the Class consists of thousands of injured persons, and (c) some members of the Class, including Plaintiffs, are citizens of States other than those of Defendants.

13. Venue in this judicial District is proper under 28 U.S.C. § 1391(b)(1) and (2). A substantial part of the events or omissions giving rise to the claims occurred within this District, Defendant CGI's business headquarters were located in this District at all relevant times, and, upon information and belief, the contracts between Plaintiffs and CGI and/or LALIC and/or ARLIC require disputes to be litigated in this District.

## PARTIES

14. Plaintiff John Fastrich is a licensed insurance agent and a Carmel, Indiana resident, with his principal place of business in Carmel, Indiana.

15. Plaintiff Universal Investment Services, Inc. ("UIS") is an Indiana insurance agency with its principal place of business in Carmel, Indiana. Plaintiff John Fastrich is the principal of Plaintiff Universal Investment Services, Inc.

16. Both Plaintiffs sold insurance products at issue in this case offered by CGI and/or LALIC and/or ARLIC.

17. Defendant Continental General Insurance Company ("CGI") is a Texas corporation with its principal place of business in Austin, Texas.

18. Great American Financial Resources, Inc. ("GAFRI") is an Ohio corporation with its principal place of business at Austin, Texas.

19. American Financial Group, Inc. ("AFG") is a Delaware corporation with its principal place of business in Cincinnati, Ohio. AFG owns CGI and GAFRI and is fully responsible for their wrongful acts.

20. CGI became part of GAFRI in 2006.

21. Loyal American Life Insurance Company ("LALIC") is an Ohio corporation with its principal place of business in Austin, Texas.

22. American Retirement Life Insurance Company ("ARLIC") is an Ohio corporation with its principal place of business in Austin, Texas.

23. In or about August 2012, GAFRI sold LALIC and ARLIC to Cigna Health & Life Insurance Company ("CHLIC"), a subsidiary of Cigna Corporation.

24. In or about December 2015, GAFRI sold all of the issued and outstanding shares of common stock of CGI to HC2 Holdings, Inc.

## FACTS

25. Plaintiffs sold Medicare supplements, long-term care insurance, life insurance and annuities for CGI, GAFRI, LALIC and/or ARLIC.

26. On information and belief, CGI, GAFRI, LALIC and/or ARLIC filed requests for approval for various new products with the appropriate state insurance commissions.

27. After obtaining state approval of these new products, CGI, GAFRI, LALIC and/or ARLIC began contacting existing policyholders and replacing the in-force policies with the new products. GAFRI and/or LALIC and/or ARLIC instructed policyholders to switch policies when receiving rate increase letters on existing CGI and/or LALIC and/or ARLIC products, respectively.

28. CGI, GAFRI, LALIC and/or ARLIC replaced existing policies with new policies and replaced existing agents of record with new agents of record.

29. The original terminated agents of record were not allowed to market the new CGI and/or LALIC and/or ARLIC products. Instead, CGI, GAFRI, LALIC and/or ARLIC licensed new agents, some of whom were in-house, to market the replacement products.

30. Plaintiffs have lost commissions, renewals, and overrides on the replacement policies and will continue to lose commissions, renewals, and overrides on said policies in the future.

31. The new policies that replaced the original CGI and/or LALIC and/or ARLIC Medicare supplement policies had a reduced commission cycle with renewals paid for a total of six years rather than a lifetime renewal commission cycle.

32. As a result of replacing the existing policies and then terminating commissions, renewals, and overrides of the existing agents of record, a number of agents of record became non-vested.

33. CGI, GAFRI, LALIC and/or ARLIC did not revert the commissions, renewals, or overrides to the agent next in the CGI and/or LALIC and/or ARLIC hierarchy, respectively. Instead, CGI, GAFRI, LALIC and/or ARLIC retained the commissions of the non-vested agents.

34. Regardless whether a policy was replaced by a new policy by in-house marketing organizations and/or selected outside agents, Plaintiffs remain the agents for record for the purpose of receiving commissions, renewals, and/or overrides.

35. The contracts between Plaintiffs, on one side, and CGI or LALIC or ARLIC, on the other side, did not provide that CGI, GAFRI, LALIC and/or ARLIC's in-house marketing organization was to receive commissions, renewals or overrides on replacement policies.

36. The contracts between Plaintiffs, on one side, and CGI and/or LALIC and/or ARLIC, on the other side, also did not provide that CGI, GAFRI, LALIC and/or ARLIC were permitted to retain commissions, renewals, and/or overrides when licensed agents became non-vested.

37. The contracts between Plaintiffs, on one side, and CGI and/or LALIC and/or ARLIC, on the other side provided that the agents of record were to receive commissions on premium increases on long term care policies written before January 2000.

38. CGI, GAFRI, LALIC and/or ARLIC breached their contractual agreements with Plaintiffs by failing to pay Plaintiffs commissions, renewals, and overrides on replacement policies.

39. CGI, GAFRI, LALIC and/or ARLIC breached their contractual agreements with Plaintiffs by failing to pay commissions, renewals, and/or overrides to the next agent up in the hierarchy when agents became non-vested.

40. CGI, GAFRI, LALIC and/or ARLIC breached their contractual agreements with Plaintiffs by not paying commissions, renewals, and/or overrides on the premium increases on long term care policies written before January 2000.

41. CGI, GAFRI, LALIC and/or ARLIC failed to allow Plaintiffs to market CGI, GAFRI, LALIC and/or ARLIC's new products, and failed to allow Plaintiffs to convert existing policyholders to the new policies.

42. CGI, GAFRI, LALIC and/or ARLIC have engaged in unfair marketing practices by, among other things, canceling existing policies, replacing the policies with new policies, attempting to cancel the Plaintiffs as agent of record, allowing their in-house marketing

organization and/or selected outside agents to market the replacement policies, and not allowing Plaintiffs to market the new products.

43. In addition to past commissions, renewals, and/or overrides due Plaintiffs, Plaintiffs are entitled to future commissions, renewals, and/or overrides on replacement policies that remain in force.

44. CGI, GAFRI, LALIC and/or ARLIC's actions were intentional, willful, and wanton, entitling Plaintiffs to punitive damages.

## CLASS ACTION ALLEGATIONS

45. Pursuant to Fed. R. Civ P. 23, Plaintiffs bring this action on behalf of themselves and the putative class members as defined below:

> all persons or entities that, from October 25, 2011 through the Effective Date of the Settlement Agreement, lost or otherwise were not paid commissions that were or would have been payable on, or attributable to, insurance policies or products issued or sold by the Defendants or Releasees as a result of Defendants or their affiliates': (1) failing to pay Commissions on premiums paid by policyholders due to premium rate increases on long-term care insurance policies; (2) failing to properly calculate and/or pay Commissions in accordance with the vesting provisions of any agreement(s) with any Defendants; or (3) replacing any person or entity as the agent of record in connection with a sale of any insurance policy.

46. Excluded from the proposed class are: (a) Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and (b) Defendant's legal representatives, predecessors, successors and assigns.

47. The requirements for maintaining this action as a class action are satisfied as follows.

48. Fed. R. Civ. P. 23(a)(1): Numerosity. The proposed class is so numerous and so geographically dispersed that the individual joinder of all absent class members is impracticable.

While the exact number of absent class members is unknown to Plaintiffs at this time, it is ascertainable by appropriate discovery and Plaintiffs are informed and believe, based on the nature of trade and commerce involved, that the proposed class may include hundreds of members, thus satisfying the requirements of Rule 23(a)(1).

49.     Fed. R. Civ. P. 23(a)(2): Common Questions of Law or Fact Predominate. Common questions of law or fact exist as to all class members and predominate over any questions which affect only individual class members.  These common questions of law or fact include, but are not limited to:

   a.  Whether Defendants breached any contractual obligations to Plaintiffs;

   b.  Whether Defendants were unjustly enriched by Plaintiffs' actions;

   c.  Whether Plaintiffs and the class members have suffered damages as a result of Defendants' conduct;

   d.  Whether Plaintiffs and the class members are entitled to damages, including punitive damages; and

   e.  The measure of damages.

50.     Fed. R. Civ. P. 23(a)(3) and (4): Typicality and Adequacy. Plaintiffs' claims are typical of the class members' claims, and Plaintiffs will fairly and adequately represent the interests of the class members.  Plaintiffs have retained counsel with substantial experience in class actions and in complex litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class members, and have the financial resources to do so. Neither Plaintiffs nor their counsel has any interests adverse to the class members' interests.

51.     Fed. R. Civ. P. 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be

encountered in the management of this class action. The Plaintiffs' damages are relatively small compared to the burden and expense that would be required to individually litigate their claims, so it would be impracticable for the class members to seek redress on an individual basis. Individualized litigation would also pose the threat of significant administrative burden to the court system. Individual cases would create the potential for inconsistent or contradictory judgments, and would increase delay and expense to all parties and the court system. By contrast the class action device presents far fewer management difficulties and provides the streamlined benefits of singular adjudication and comprehensive supervision by one court. Given the similar nature of the class members' claims, the class will be easily managed by the Court and the parties and will be managed more efficiently in this integrated class action than through multiple separate actions in the various states.

## COUNT I – BREACH OF CONTRACT

52. Plaintiffs incorporate the above paragraphs by reference.

53. Defendants breached the agreements described above by, among other things: (a) canceling CGI and/or LALIC and/or ARLIC's existing policies; (b) replacing the existing policies with new policies and replacing Plaintiffs as agents of record; (c) allowing GARFI and/or LALIC and/or ARLIC's in-house marketing organization and/or selected outside agents to market the replacement policies while at the same time not allowing Plaintiffs to market the new products; and (d) failing to pay past and present commissions, renewals, and overrides due Plaintiffs.

54. As a result of Defendants' breach of contract, Plaintiffs and the class members have been damaged in an amount to be determined at trial.

## COUNT II – UNJUST ENRICHMENT

55. Plaintiffs incorporate the above paragraphs by reference.

56. If Defendants are permitted to terminate their relationships with Plaintiffs, they will receive the benefit of all of Plaintiffs' labor, efforts, investments, trade secrets, reputation, name, image, market, goodwill, research, commissions, renewals, and overrides.

57. By terminating their relationships with Plaintiffs, Defendants have and will in the future keep and retain the economic benefit of Plaintiffs' long time businesses.

58. Plaintiffs have not been compensated for such items and their benefits by Defendants. The retention by Defendants of all such items and benefits would be at Plaintiffs' and the class members' expense and would constitute unjust enrichment in an amount to be determined at trial.

## JURY DEMAND

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment:

1. Awarding money damages, including prejudgment interest, on each claim in an amount to be established at trial;

2. Awarding attorneys' fees and costs, and other relief;

3. Granting such other relief as to this Court may seem just and proper.

Dated: February 6, 2019

                                     SHINDLER ANDERSON GOPLERUD & WEESE P.C.

                                     /s/ Brian O. Marty_____
J. Barton Goplerud
Brian O. Marty
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265
Telephone: (515) 223-4567
Facsimile: (515) 2223-8887
E-Mail: goplerud@sagwlaw.com
               marty@sagwlaw.com

ROSCALAW LLC

Alan L. Rosca
RoscaLaw LLC
23250 Chagrin Blvd., Suite 100
Beachwood, OH 44122
Telephone: (216) 242-6460
Facsimile: (888) 411-0038
Email: arosca@roscalaw.com

*Counsel for Plaintiffs*